IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| BREVAN BAUGH,<br><br>    Plaintiff,<br><br>vs.<br><br>ALLIED PROFESSIONALS INSURANCE COMPANY, A RISK RETENTION GROUP, INC.,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER ON MOTION FOR DETERMINATION OF ATTORNEY'S FEES AND COSTS (ECF NO. 17)**<br><br>Case No.: 1:18-cv-00074-DB-EJF<br><br>District Judge Dee Benson<br><br>Magistrate Judge Evelyn J. Furse |

  Before the Court[1] is Defendant Allied Professionals Insurance Company, A Risk Retention Group, Inc.'s ("Allied Professionals") Motion for Determination of Attorney's Fees and Costs. (Def.'s Mot. for Determination of Attorney Fees & Costs ("Mot. for Fees"), ECF No. 17.) Having considered the briefing and materials submitted for and against the Motion, the Court ORDERS Dr. Brevan Baugh to pay Allied Professionals $24,228.36 in attorney's fees and costs.

## **FACTUAL BACKGROUND**

  This case arises out of Dr. Baugh's attempt to have Allied Professionals, his professional liability insurer, indemnify him against a lawsuit by an allegedly injured former patient. (Compl., ECF No. 2-2.) Allied Professionals denied the claim, and Dr.

---

[1] On July 10, 2018, the District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A). (ECF No. 5.)

1

Baugh filed an action for declaratory relief in state court.  (Id.)  Thereafter, Allied Professionals removed the action to federal court (Notice of Removal, ECF No. 2), and filed a motion to compel arbitration, which it claimed the insurance policy required.  (Def.'s Mot. to Compel Arbitration & Stay Proceedings or in the Alternative to Transfer the Case, ECF No. 8.)  The Court granted Allied Professionals' motion and awarded it attorney's fees as the prevailing party under the terms of the insurance policy.  (Mem. Decision & Order Granting Def.'s Mot. to Compel Arbitration & Stay Proceedings (ECF No. 8) ("Order"), ECF No. 16.)  The insurance policy at issue here states,

> [i]f any party seeks a court order compelling arbitration under this provision, the prevailing party in such motion, petition or other proceeding to compel arbitration shall recover all reasonable legal fees and costs incurred thereby and in any subsequent appeal, and in any action to collect the fees and costs.

(Prof'l Liab. Ins. Policy ("Policy") V.C. at 2, ECF No. 17-3.)

The Court ordered the parties to meet and confer as to the amount of the attorney's fees.  (Order at 9, ECF No. 16.)  The parties did not reach an agreement on the appropriate amount of attorney's fees, resulting in Allied Professionals filing the instant motion.  (Mot. for Fees at 1, ECF No. 17.)  Dr. Baugh filed his Memorandum in Opposition to Defendant's Motion for Determination of Attorney's Fees and Costs, claiming that Allied Professionals' requested amount of $25,124.62 is excessive and that the maximum award of attorney's fees should be $4,000.00.  (Mem. in Opp'n to Def.'s Mot. for Determination of Attorney's Fees & Costs ("Mem. in Opp'n") at 5, 8, ECF No. 21.)  Allied Professionals filed a reply.  (Def.'s Reply Supporting its Mot. for Determination of Attorney Fees & Costs ("Def.'s Reply"), ECF No. 23.)

## **LEGAL STANDARD**

The insurance policy governs the award of fees in this case, and the Court sits in diversity. (Order at 4, 9, ECF No. 16.) Because the Court sits in diversity, it must apply the choice-of-law rules of the forum state, Utah. Been v. O.K. Indus. Inc., 495 F.3d 1217, 1236 (10th Cir. 2007). In general, Utah courts enforce contractual choice-of-law provisions. Jacobsen Constr. Co. v. Teton Builders, 2005 UT 4, ¶ 12 & n. 2, 106 P.3d 719 (citing Restatement (Second) of Conflict of Laws § 187). The policy in this case includes a choice of law provision designating that California law will govern the policy and the parties' rights thereunder, but the federal law will govern arbitration. (Policy V.Q. at 2, ECF No. 17-3.) However, both parties' briefing cites Utah law with respect to the award of fees. (Opp'n 6, ECF No. 21; Reply 3, ECF No. 23.) Neither party makes any reference to California law or the choice of law provision. Therefore, the Court will decide the Motion based on Utah law and consider the issue waived. See ClearOne Commc'ns., Inc. v. Bowers, 643 F.3d 735, 769-771, 773 (10th Cir. 2011) (finding no error in application of Utah law where the parties failed to press for application of another forum's law).

"Where the parties have agreed by contract to the payment of attorney fees, the court may award reasonable fees in accordance with the terms of the parties' agreement." Trayner v. Cushing, 688 P.2d 856, 858 (Utah 1984). The Utah Supreme Court later set forth four questions a court should consider in determining a reasonable attorney's fee:

1. What legal work was actually performed?

2. How much of the work performed was reasonably necessary to adequately prosecute the matter?

3

3. Is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services?

4. Are there circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility?

Dixie State Bank v. Bracken, 764 P.2d 985, 990 (Utah 1988).

"An award of attorney fees must be based on the evidence and supported by findings of fact." Cottonwood Mall Co. v. Sine, 830 P.2d 266, 268 (Utah 1992). The party seeking an award of attorney fees thus bears the burden of producing evidence to support the award requested, including evidence about "the hours spent on the case, the hourly rate or rates charged for those hours, and usual and customary rates for such work." Id.

## **DISCUSSION**

Allied Professionals' fee and cost motion asks the Court to award it a total of $25,124.62 pursuant to the prior order. (Mot. for Fees at 3, ECF No. 17.) Allied Professionals attributes $14,976.00 of this amount for the services of attorney Michael Kadish, $9,735.39 for the services of attorney Patrick L. Tanner, and $413.23 to costs. (Id. at 4–5; Decl. of Michael B. Kadish in Support of Attorney's Fees & Costs Award ("Kadish Decl.") ¶ 12 & Feb. 5, 2019 Invoice & Mar. 6, 2018 Invoice, ECF No. 17-1; Decl. of Patrick L. Tanner Regarding Attorney Fees & Costs ("Tanner Decl.") ¶ 13 & Aug. 10, 2018 Invoice at 2, ECF No. 17-2.) The fee motion includes detailed declarations from Mr. Kadish (Kadish Decl., ECF No. 17-1) and Mr. Tanner (Tanner Decl., ECF No. 17-2), setting forth the scope and cost of each attorney's respective work since the inception of this case, including work completed in obtaining the motion to compel arbitration. Both attorneys aver that they did not duplicate each other's work.

4

(Kadish Decl. ¶ 12, ECF No. 17-1; Tanner Decl. ¶ 14, ECF No. 17-2.) Further, both attorneys provided redacted billing records for all the requested fees. (Kadish Decl., Ex. C, ECF No. 17-1; Tanner Decl., Ex. A, ECF No. 17-2.)

I. SCOPE OF CONTRACTUAL FEES PROVISION

"[A] party is entitled only to those fees attributable to the successful vindication of contractual rights within the terms of their agreement." Trayner, 688 P.2d at 858. Allied Professionals contends that its sought solely to obtain a court order compelling arbitration since receiving Dr. Baugh's lawsuit, so it should recover all attorney's fees and costs since the inception of this matter. (Mot. for Fees at 6-7, ECF No. 17.) Dr. Baugh argues that Allied Professionals improperly includes expenses beyond the express terms of the contract in its accounting of attorney's fees and costs. (Mem. in Opp'n at 2–3, ECF No. 21.) Specifically, he alleges that Allied Professionals may not recover attorney fees incurred for removing this case to federal court, for answering the complaint, or for communications with opposing counsel regarding stipulating to arbitration, as these actions were not necessary in Allied Professionals' successful effort to compel arbitration. Id. at 2, 4–5.

After a detailed review of the submitted attorney declarations and billing records, the Court finds that Allied Professionals may recover nearly all the attorney's fees and costs incurred because its attorneys reasonably took those actions to obtain the order to compel arbitration. While removal, answering the complaint, or communications with opposing counsel do not qualify as researching, drafting, or arguing the Motion to Compel Arbitration, all these steps constitute actions taken by counsel to obtain that result. This Court sees no need to second-guess a litigation strategy that succeeded.

5

See Chevron Pipe Line Co. v. Pointe Perry, LC, No. 2:08-cv-981, 2011 WL 4565767, *3 (D. Utah Sept. 29, 2011) (unpublished) (noting that plaintiff's "success in this case supports the propriety of their litigation strategy") (citing Flying J Inc. v. Comdata Network, Inc., No. 1:96CV066 BSJ, 2007 WL 3550342 (D. Utah Nov. 15, 2007) (unpublished)).  Allied Professionals may also recover for attorney's fees incurred in seeking the award and determination of its fees and costs, as the parties' contract provided for these amounts.  (Policy at 2, ECF No. 17-3.)

## II. REASONABLE HOURS

Dr. Baugh argues that Allied Professionals spent an excessive and unreasonable amount of time on this matter as compared to that necessary to obtain its objective.  (Mem. in Opp'n 6-7, ECF No. 21.)  Allied Professionals was "entitled to hire its own counsel and make its own assessment of the time that [was] necessary for success."  Chevron Pipe Line, 2011 WL 4565767, at *3.

Initially, Dr. Baugh contends the Court merely found it lacked jurisdiction, and thus any "result achieved has been small."  (Mem. in Opp'n 7, ECF No. 21.)  The Court disagrees.  Dr. Baugh sought to litigate his dispute in court.  Allied Professionals obtained an order enforcing the provision of its policy requiring Dr. Baugh to go first to arbitration.  That result is exactly the result for which the fee provision provides compensation.

Dr. Baugh suggests that $4,000.00 is a total reasonable fee for the work performed by Allied Professionals' counsel and requests that the Court award this amount.  (Mem. in Opp'n 8, ECF No. 21.)  Mr. Bergman's declaration supports this argument showing he expended $3,509.20 and 16.35 hours in defending the motion to

6

compel.  (Sworn Decl. of Aaron K. Bergman in Support of Pl.'s Opp'n to Attorney's Fees & Costs ("Bergman Decl.") ¶ 7 & Activities Export, ECF No. 21-1.)  Mr. Kadish charged $14,976.00 for 46.8 hours of his time.  (Kadish Decl., Ex. C, ECF No. 17-1.)  While Mr. Tanner charged $9,735.39 for 45.45 hours of his time.  (Tanner Decl. ¶ 12, ECF No. 17-2.)

"Evidence of the hours expended by opposing counsel may be helpful in determining whether time expended on a case was reasonable, but the opponent's time is not an 'immutable yardstick of reasonableness.' " Shaw v. AAA Eng'g & Drafting, Inc., 213 F.3d 538, 543 (10th Cir. 2000) (citing Robinson v. City of Edmond, 160 F.3d 1275, 1284 (10th Cir.1998)).  In this case, counsel for Allied Professionals ultimately succeeded in compelling arbitration of this matter, while counsel for Dr. Baugh unsuccessfully defended the motion.  This outcome implies that Allied Professionals "correctly invested the necessary litigation resources . . . The fact that it cost more to win the day than it did to lose does not indicate that 'more' was either unreasonable or excessive."  Flying J Inc., 2007 WL 3550342, at *20.

More importantly, winning the Motion required Allied Professionals to respond to litigation filed in court against it by Dr. Baugh.  Thus to obtain this result, Allied Professionals had to answer the Complaint and had to participate in scheduling.  Allied Professionals engaged in the best practice of attempting to convince Dr. Baugh to go to arbitration without court litigation.  One could debate whether Allied Professionals needed to remove the case to federal court, but without question they had a right to do so, and thus again the Court will not question their successful litigation strategy.

The only aspect of the hours expended that the court finds unreasonable are what appear to be monthly check-ins while the Motion to Compel remained pending. The electronic filing system provides immediate notification of developments in one's case. To the extent the attorneys billed this time for something more substantive neither the declarations nor the billing statements make that clear. Thus the Court denies compensation for 2.6 hours of Mr. Kadish's time and 0.3 hours of Mr. Tanner's time. (Kadish Decl., Ex. C, (entries for Oct. 19, 2018, Nov. 13, 2018, Dec. 12, 2018, Dec. 31, 2018, Jan. 18, 2019, Jan. 21, 2019, Feb. 18, 2019, Feb. 19, 2019, Feb. 20, 2019), ECF No. 17-1; Tanner Decl., Ex. A. (entries for Dec. 12, 2018, Dec. 31, 2018) ECF No. 17-2.)

## III. ALLEGATIONS OF UNAUTHORIZED PRACTICE OF LAW

Dr. Baugh argues, without citing any legal authority in support, that Mr. Kadish's request for fees related to this matter "amounts to the unauthorized practice of law," because he lacks a law license from Utah and failed to request pro hac vice admission. (Mem. in Opp'n to Def.'s Mot. for Determination of Attorney's Fees & Costs (Errata) ("Errata") ¶ 2, ECF No. 22.) The Court finds this argument meritless. Mr. Kadish has not appeared in any Utah court in connection with this matter nor has he signed any pleadings on behalf of Allied Professionals in this Court. Instead, Mr. Kadish worked with local counsel, Mr. Tanner, to create and file all pleadings. The Tenth Circuit has determined that in such cases, an out-of-state attorney, whose work filters through a licensed in-state attorney and who makes no appearances in the relevant state as attorney, may receive fees for his work. Dietrich Corp. v. King Res. Co., 596 F.2d 422, 426 (10th Cir. 1979).

## IV. REASONABLENESS OF MR. KADISH'S FEE

Dr. Baugh does not challenge Mr. Tanner's hourly rate of $214.20. Dr. Baugh alleges that Mr. Kadish charges an excessive hourly rate, $320.00, for the locality in which he rendered services. (Mem. in Opp'n at 7-8, ECF No. 21.) As evidence Dr. Baugh submits the declaration from his attorney, Aaron Bergman (Bergman Decl., ECF No. 21-1), which states that an appropriate hourly rate for an attorney in Salt Lake City ranges between $175.00 and $275.00, depending on the attorney's experience. (Bergman Decl. at 2.) Dr. Baugh also argues that Mr. Kadish and Mr. Tanner have nearly the same years of experience, and Mr. Tanner charges more than $100 less an hour. (Mem. in Opp'n at 7-8, ECF No. 21.) Furthermore, Mr. Bergman's hourly rate since 2018 is $225 an hour although he does not state his years in practice generally or his experience in the field of insurance.

Allied Professionals argues that Mr. Kadish practices law and rendered his services in California, and thus California is the relevant locality for determining reasonableness of his hourly rate. (Def.'s Reply at 6, ECF No. 23.) Additionally, the $320 rate reflects a discount from his usual rate of between $425 and $575 an hour. (Kadish Decl. ¶ 5, ECF No.17-1.) Mr. Kadish notes that he is "the primary outside counsel for [Allied Professionals] nationally, principally responsible for enforcement of its policy terms and conditions." (Id. ¶ 4.)

Given Mr. Kadish's experience and expertise, the Court concludes that the requested rates for Mr. Kadish falls in line with the prevailing market rates in Utah. Mr. Tanner's rate and the fees requested also appear reasonable, including the removal fee.

9

## **CONCLUSION**

For the reasons discussed above, the Court finds that Dr. Baugh owes Allied Professionals $24,228.36 in attorney's fees and costs in connection with the Motion to Compel Arbitration. The Court ORDERS Plaintiff Brevan Baugh to pay Defendant Allied Professionals $24,228.36 within fourteen (14) days of entry of this Order.

DATED this 19th day of March, 2020.

BY THE COURT:

_____
Evelyn J. Furse
United States Magistrate Judge